UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION



Case No.:

6:12-cv-560-ORL-22KRS

BELLEAIR EAST HCC, LLC d/b/a BELLEAIR
HEALTH CARE CENTER; CENTRE POINTE
HRC, LLC d/b/a CENTRE POINTE
HEALTH & REHABILITATION CENTER;
CONWAY LAKES NC, LLC d/b/a CONWAY
LAKES REHABILITATION CENTER; DEEP
CREEK RNC, LLC d/b/a PORT CHARLOTTE
REHABILITATION CENTER; EAST BAY NC, LLC
d/b/a EAST BAY  NURSING CENTER; MELBOURNE
TERRACE RCC, LLC d/b/a MELBOURNE
TERRACE REHABILITATION CENTER; and
SPRING LAKE NC, LLC d/b/a SPRING LAKE
REHABILITATION CENTER,

     Plaintiffs,

v.

OMNICARE, INC. and OMNICARE PHARMACY OF
FLORIDA, LP,

     Defendants.

_____/

## COMPLAINT

Plaintiffs, BELLEAIR EAST HCC, LLC d/b/a BELLEAIR HEALTH CARE

CENTER; CENTRE POINTE HRC, LLC d/b/a CENTRE POINTE HEALTH &

REHABILITATION CENTER; CONWAY LAKES NC, LLC d/b/a CONWAY

LAKES REHABILITATION CENTER; DEEP CREEK RNC, LLC d/b/a PORT

CHARLOTTE REHABILITATION CENTER; EAST BAY NC, LLC d/b/a EAST

BAY NURSING CENTER; MELBOURNE TERRACE RCC, LLC d/b/a

MELBOURNE TERRACE REHABILITATION CENTER; and SPRING LAKE NC, LLC d/b/a SPRING LAKE REHABILITATION CENTER (hereinafter collectively referred to as "the Facilities") submit the following in support of their claims for relief against Defendants, OMNICARE, INC. and OMNICARE PHARMACY OF FLORIDA, LP:

## I. JURISDICTION AND VENUE

1.      Plaintiff, CONWAY LAKES NC, LLC d/b/a CONWAY LAKES AND REHABILITATION CENTER, is a limited liability company organized and existing under the laws of the State of Georgia with its principal place of business in Atlanta, Georgia.  CONWAY LAKES NC, LLC is the successor in interest to MHC/CSI Florida, Inc. d/b/a Mariner Health of Conway Lakes.  At all times relevant to this action, CONWAY LAKES NC, LLC d/b/a CONWAY LAKES REHABILITATION CENTER held a license to operate a skilled nursing facility located at 5201 Curry Ford Road in Orlando, Florida.

2.      Plaintiff, BELLEAIR EAST HCC, LLC d/b/A BELLEAIR HEALTH CARE CENTER, is a limited liability company organized and existing under the laws of the State of Georgia with its principal place of business in Atlanta, Georgia.  At all times relevant to this action, BELLEAIR EAST HCC, LLC d/b/a BELLEAIR HEALTH CARE CENTER held a license to operate a skilled nursing facility located at 1150 Ponce de Leon Boulevard in Clearwater, Florida.

3.      Plaintiff, CENTRE POINTE HRC, LLC d/b/a CENTRE POINTE HEALTH & REHABILITATION CENTER, is a limited liability company organized

and existing under the laws of the State of Georgia with its principal place of business in Atlanta, Georgia. At all times relevant to this action, CENTRE POINTE HRC, LLC d/b/a CENTRE POINTE HEALTH & REHABILITATION CENTER held a license to operate a skilled nursing facility located at 2255 Centerville Road in Tallahassee, Florida.

4. Plaintiff, DEEP CREEK RNC, LLC d/b/a PORT CHARLOTTE REHABILITATION CENTER, is a limited liability company organized and existing under the laws of the State of Georgia with its principal place of business in Atlanta, Georgia. At all times relevant to this action, DEEP CREEK RNC, LLC d/b/a PORT CHARLOTTE REHABILITATION CENTER held a license to operate a skilled nursing facility located at 25325 Rampart Boulevard in Port Charlotte, Florida.

5. Plaintiff, EAST BAY NC, LLC d/b/a EAST BAY NURSING CENTER, is a limited liability company organized and existing under the laws of the State of Georgia with its principal place of business in Atlanta, Georgia. EAST BAY NC, LLC is the successor in interest to MHC/CSI Florida, Inc. d/b/a Mariner Health of Clearwater. At all times relevant to this action, EAST BAY NC, LLC d/b/a EAST BAY NURSING CENTER held a license to operate a skilled nursing facility located at 4470 East Bay Drive in Clearwater, Florida.

6. Plaintiff, MELBOURNE TERRACE RCC, LLC d/b/a MELBOURNE TERRACE REHABILITATION CENTER, is a limited liability company organized and existing under the laws of the State of Georgia with its principal place of

3

business in Atlanta, Georgia. MELBOURNE TERRACE RCC, LLC is the successor in interest to MHC/CSI Florida, Inc. d/b/a Mariner Health of Melbourne. At all times relevant to this action, MELBOURNE TERRACE RCC, LLC d/b/a MELBOURNE TERRACE REHABILITATION CENTER held a license to operate a skilled nursing facility located at 251 Florida Avenue in Melbourne, Florida.

7.     Plaintiff, SPRING LAKE NC, LLC d/b/a SPRING LAKE REHABILITATION CENTER, is a limited liability company organized and existing under the laws of the State of Georgia with its principal place of business in Atlanta, Georgia. At all times relevant to this action, SPRING LAKE NC, LLC d/b/a SPRING LAKE REHABILITATION CENTER held a license to operate a skilled nursing facility located at 1540 6th Street NW in Winter Haven, Florida.

8.     Defendant, OMNICARE, INC. ("Omnicare"), is a corporation organized and existing under the laws of the State of Delaware with its principal place of business in Covington, Kentucky.

9.     Defendant, OMNICARE PHARMACY OF FLORIDA, LP ("Omnicare of Florida") is a limited partnership organized and existing under the laws of the State of Delaware with its principal place of business in Covington, Kentucky. At all times relevant to this action, OMNICARE PHARMACY OF FLORIDA, LP was doing business in the State of Florida as Omnicare of Tampa, Omnicare of Panama City, Omnicare of Central Florida, and Omnicare Pharmacy of Florida – Tallahassee, amongst other fictitious names.

4

10.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. §1332(a)(1) and (c), as this controversy involves citizens of different states and the amount in controversy exceeds Seventy-Five Thousand Dollars ($75,000.00).

11.     Venue is appropriate and proper in the United States District Court for the Middle District of Florida, Orlando Division.

## II. FACTUAL ALLEGATIONS

12.     The Facilities are engaged in the operation of skilled nursing facilities in the State of Florida.

13.     The Facilities, with the exception of CENTRE POINTE HRC, LLC d/b/a CENTRE POINTE HEALTH & REHABILITATION CENTER, were managed by Sovereign Healthcare Holdings, LLC until September 30, 2009.  CENTRE POINTE HRC, LLC d/b/a CENTRE POINTE HEALTH & REHABILITATION CENTER was managed by Life Care Centers of America, Inc. until September 30, 2009.   Effective September 30, 2009, the Facilities came under the management of Clear Choice Health Care, LLC.

14.     Omnicare is a publicly traded company and purports to be the nation's largest provider of pharmaceutical and related ancillary pharmacy services to seniors and long term health care institutions.  Omnicare represents that it provides pharmacy services to skilled nursing facilities and assisted living communities in 47 states in the United States and in Canada.  Omnicare further holds itself out to provide operational software and support systems to long term

5

care providers across the United States, as well as pharmaceutical distribution and patient assistance services for specialty pharmaceuticals.

15.     Omnicare of Florida is a local supplier of institutional pharmaceutical products and services to the Facilities and their residents.

16.     On or about October 1, 2003, Sovereign Healthcare Holdings, LLC ("Sovereign") and Omnicare entered into a Master Pharmacy Products and Services Agreement ("the Master Agreement"), a copy of which has been filed contemporaneously herewith as **Exhibit A**[1], by the terms of which Omnicare agreed to supply certain pharmaceutical products and other services to the Facilities.

17.     Pursuant to the terms of the Master Agreement, Omnicare's pharmacies, including Omnicare of Florida, were to provide pharmaceutical products and services to include:

> Pharmaceutical dispensing and distribution services and Prescription Drugs, including, without limitation, parenteral nutrition products; Faciltiy staff training and education programs relating to Pharmacy Products and Services; pharmacy consulting services; pharmacy medical records maintenance; provision of clinically-based drug formulary and disease management programs; and Part B services (subject to Section 2.c)…

(Master Agreement p. 4).

18.     These pharmaceutical products and services were to be provided to "Sovereign Facilities" which the Master Agreement defined as:

---

[1] Due to certain confidentiality provisions contained within the Master Agreement, Plaintiffs have filed the Master Agreement separately from this Complaint with a Motion for Leave to File Under Seal.

(i) any Facility managed by Sovereign or any of its Affiliates as of the Effective Date, and (ii) any New Sovereign Facility; provided, that any Facility that is prohibited by contractual arrangement from inclusion in this Agreement shall not be deemed to be a Sovereign Facility until such time as such contractual arrangement may be terminated without incurring a Termination Penalty; and provided further that any Sovereign Facility that terminates its Standard Facility Pharmacy Products and Services Contract (i) for default by an Omnicare Pharmacy, **or (ii) because such Sovereign Facility has ceased to be affiliated with Sovereign by reason of sale, or by reason of the termination or non-renewal of any applicable lease or management agreement, shall no longer be considered a Sovereign Facility**.

(Master Agreement p. 5) (Emphasis added).

19.    On or about April 1, 2003, CONWAY LAKES NC, LLC d/b/a CONWAY LAKES AND REHABILITATION CENTER and Omnicare of Florida entered into a Pharmacy Products and Services Agreement for the provision of pharmaceutical supplies, services and consulting.  See **Exhibit B**[2].

20.    On or about December 1, 2003, BELLEAIR EAST HCC, LLC d/b/a BELLEAIR HEALTH CARE CENTER and Omnicare of Florida, as successor in interest to BADGER ACQUISITION OF TAMPA, LLC d/b/a BAY PHARMACY entered into a Pharmacy Products and Services Agreement for the provision of pharmaceutical supplies, services and consulting.  See **Exhibit C**[2].

21.    On or about December 1, 2003, CENTRE POINTE HRC, LLC d/b/a CENTRE POINTE HEALTH & REHABILITATION CENTER and Omnicare of Florida, as successor in interest to OMNICARE PHARMACY OF FLORIDA –

---

[2] Due to certain confidentiality provisions contained within the Master Agreement and each Pharmacy Products and Services Agreement, Plaintiffs have filed each Pharmacy Products and Services Agreement separately from this Complaint with a Motion for Leave to File Under Seal.

TALLAHASSEE, entered into a Pharmacy Products and Services Agreement for the provision of pharmaceutical supplies, services and consulting. See **Exhibit D**[2].

22.    On or about December 1, 2003, DEEP CREEK RNC, LLC d/b/a PORT CHARLOTTE REHABILITATION CENTER and Omnicare of Florida, as successor in interest to BADGER ACQUISITION OF TAMPA, LLC d/b/a BAY PHARMACY, entered into a Pharmacy Products and Services Agreement for the provision of pharmaceutical supplies, services and consulting. See **Exhibit E**[2].

23.    On or about December 1, 2003, EAST BAY NC, LLC d/b/a EAST BAY NURSING CENTER and Omnicare of Florida, as successor in interest to BADGER ACQUISITION OF TAMPA, LLC d/b/a BAY PHARMACY, entered into a Pharmacy Products and Services Agreement for the provision of pharmaceutical supplies, services and consulting. See **Exhibit F**[2].

24.    On or about December 1, 2003, MELBOURNE TERRACE RCC, LLC d/b/a MELBOURNE TERRACE REHABILITATION CENTER and Omnicare of Florida, as successor in interest to COMPASS/APS OF LONGWOOD, entered into a Pharmacy Products and Services Agreement for the provision of pharmaceutical supplies, services and consulting. See **Exhibit G**[2].

25.    On or about December 1, 2003, SPRING LAKE NC, LLC d/b/a SPRING LAKE REHABILITATION CENTER and Omnicare of Florida, as successor in interest to BADGER ACQUISITION OF TAMPA, LLC d/b/a BAY

PHARMACY, entered into a Pharmacy Products and Services Agreement for the provision of pharmaceutical supplies, services and consulting.  See **Exhibit H**[2].

26.     By the terms of the Pharmacy Products and Services Agreements entered into with each of the Facilities, Omnicare of Florida separately agreed with each Facility that it would supply certain pharmaceutical products and services in accordance with the Master Agreement.

27.     In the Master Agreement, Omnicare represented to Sovereign and the Facilities that due to its volume pricing arrangements, experience, quality of operations and cost-effective pricing, it could and would offer the Sovereign Facilities efficient and legally compliant pharmacy services and favorable pricing arrangements throughout the United States.  Specifically, paragraph 4.a(ii) of the Master Agreement provided:

> Notwithstanding anything to the contrary set forth in Section 4.a(i) or elsewhere in this Agreement, **in no event shall the Prices be higher than the most favorable prices for Pharmacy Products Services charged to Facilities other than Sovereign Facilities ("Third Party Facilities") which are located in the same state. If during the term of this Agreement Omnicare or any of its Affiliates enter into a Third Party Agreement whereby an Omnicare Pharmacy charges prices for Pharmacy Products and Services to a Third Party Facility that are lower than the Prices applicable to Sovereign Facilities located in the same state, the Prices shall be reduced so that they are equivalent to the prices provided in the Third Party Agreement, effective as of the effective date of such Third Party Agreement (a "Price Revision").** In such event, Omnicare shall refund any overpayment to Sovereign within thirty (30) days of the effective date of the Price Revision.

(at times referred to as the "most favorable pricing" provision) (Emphasis added).

9

28.     Omnicare charged the Facilities for pharmaceutical products and services in accordance with the prices set forth in Exhibit B of the Master Agreement.  These rates included a fixed cost per patient day rate, in addition to an hourly fee for any additional services provided by Omnicare.  As "Sovereign Facilities" as that term was defined in the Master Agreement, the Facilities were entitled to "most favorable pricing" for the duration of the agreement.

29.     For the period of December 1, 2003 until various dates in December 2009 and January 2010, Omnicare provided pharmaceutical products and services and submitted invoices to the Facilities on a monthly basis.

30.     On September 30, 2009, Clear Choice Health Care, LLC ("Clear Choice") replaced Sovereign and became the management company for the Facilities.   On that date, the Facilities were no longer deemed "Sovereign Facilities" as that term was defined in the Master Agreement.

31.     An invoice validation conducted by the Facilities' consultants thereafter demonstrated evidence that the Facilities were incorrectly charged more than $1.7 million for pharmacy products and services in violation of the "most favorable pricing" provision of the Master Agreement.    Specifically, Omnicare's irregular billing practices include, but are not limited to:

> a. Charging for more quantities of pharmacy services and pharmaceutical products than were actually provided;
>
> b. Billing for products and services in a manner that did not indicate any of the industry and/or regulatorily-accepted indicia of billing for pharmacy services;

10

    c. Billing for charges either not allowed by Medicaid or payable by Medicaid; and

    d. Failing to notify the Facilities when a drug had been determined to be non-compensable or payment had been denied.

32.    Further, the Facilities are informed and believe and thereon allege that Omnicare had entered into Pharmacy Products and Services Agreements with third parties in the State of Florida in which third parties were charged lower prices for pharmacy products and services than those provided to the Facilities. Omnicare failed to reduce the prices charged to the Facilities such that they were equivalent to the prices charged to other facilities.

33.    No overpayments were refunded to the Facilities.

34.    Because the Facilities had reason to believe that they were being overcharged in violation of the Master Agreement and individual Pharmacy Products and Services Agreements, Omnicare was placed on notice of its improper billing practices. The Facilities thereafter requested a list of every facility in Florida which had a per diem contract with Omnicare, copies of the current per diem contracts with all amendments, and the pricing schedules for all facilities in Florida with which Omnicare had per diem contracts, to establish that improper billing practices were occurring. Omnicare denied this request and had its internal auditors evaluate the monthly invoices submitted to the Facilities for pharmaceutical products and services. Omnicare's internal auditors found that there was indeed a discrepancy in the prices charged the Facilities, although the parties could not agree as to the extent of the overcharges.

35. Based upon evidence that the Facilities were being overcharged by Omnicare for pharmaceutical products and services, the Facilities elected to exercise their right to adjust the rates and fees charged to the Facilities pursuant to paragraph 9.p.(vii) of the Master Agreement, which provided:

> **Until any dispute is resolved through mutual agreement or binding arbitration, each party shall continue to observe all other terms of this Agreement; provided, however, that if the parties' dispute relates to the rates and fees to be charged to any Sovereign Facility or group of Sovereign Facilities, then the rates and fees in effect for such Sovereign Facility or group of Sovereign Facilities while the arbitration is pending shall be the rates that Sovereign contends should be in effect.** In addition to the foregoing fees and costs, if any such arbitration is resolved in favor of Omnicare, then Sovereign shall pay to Omnicare an amount equal to the difference between the rates and fees that Sovereign alleged should have been in effect and the rates and fees determined by the arbitration panel.

(Emphasis added.)

36. The Facilities retained the services of a pharmaceutical consulting expert who determined that the cost per patient day rate which was being charged to the Facilities by Omnicare was higher than that being charged to other facilities in Florida with which Omnicare had contracts. Therefore, in accordance with the provisions of paragraph 9.p.(vii) of the Master Agreement, the Facilities retroactively adjusted the cost per patient day per rate to a lower rate.

37. Despite the decision of the Facilities to exercise their right to adjust the rates and fees charged to the Facilities pursuant to paragraph 9.p.(vii) of the

Master Agreement, Omnicare continued to bill for pharmaceutical products and services provided to the Facilities at a higher rate in violation of the "most favorable pricing" provision.

38.     Upon expiration of the management agreements between the Facilities and Sovereign on September 30, 2009, the Facilities sought to terminate each Pharmacy Products and Services Agreement in accordance with the terms of those agreements on the basis that each Facility was no longer a "Sovereign Facility" as defined in the Master Agreement.

39.     Based upon the termination of services, Omnicare's continued failure to reduce its per diem rate to one in compliance with the "most favorable pricing" provision of the Master Agreement, and Omnicare's failure to refund the amounts overpaid by the Facilities, further payment for pharmaceutical products and services was withheld.

40.     Omnicare and Omnicare of Florida continue to owe more than $1.7 million, exclusive of interest, to the Facilities for overbilled pharmaceutical products and services.

### III. CAUSES OF ACTION

### COUNT I: BREACH OF CONTRACT

41.     The Facilities hereby re-allege and incorporate herein the allegations set forth in Paragraphs 1 through 38, inclusive, as though set forth at length herein.

42.     The Pharmacy Products and Services Agreements are lawful, valid and binding contracts by and between Omnicare of Florida and the Facilities for the provision of pharmaceutical products and services.

43.     Pursuant to the Master Agreement and each Pharmacy Products and Services Agreement, Omnicare and Omnicare of Florida had an obligation to provide prices for its pharmaceutical products and services which were no higher than the most favorable prices for pharmacy products and services charged to third party facilities located in the same state.

44.     Omnicare and Omnicare of Florida provided pharmaceutical goods and services to the Facilities at the prices set forth in the Master Agreement, and the Facilities agreed to and did pay the prices charged for these goods and services.

45.     Omnicare and Omnicare of Florida breached the Pharmacy Products and Services Agreements with each Facility by engaging in improper billing practices which included, but are not limited to:

      a. Charging for more quantities of pharmacy services and pharmaceutical products than were actually provided;

      b. Billing for products and services in a manner that did not indicate any of the industry and/or regulatorily-accepted indicia of billing for pharmacy services;

      c. Billing for charges either not allowed by Medicaid or payable by Medicaid;

      a. Failing to notify the Facilities when a drug had been determined to be non-compensable or payment had been denied;

b. Billing for pharmaceutical products and services at a rate higher than the most favorable prices for pharmacy products and services charged to third party facilities;

c. Failing to notify the Facilities that Omnicare and/or its Affiliates had entered into third party agreements whereby the prices charged by an Omnicare pharmacy to a third party facility were lower than those charged to the Facilities;

d. Failing to revise the prices charged to the Facilities to the equivalent of the lower prices provided to third party facilities for pharmacy products and services;

e. Failing to refund the overbilled amounts within thirty (30) days; and

f. Failing to comply with all representations and warranties of the Pharmacy Products and Services Agreements, including failing to comply with applicable statutes, regulations, rules, orders, ordinances, and other laws of any governmental entity to which the Pharmacy Products and Services Agreements and the parties' obligations thereunder were subject with respect to healthcare laws.

46.    As a direct result of material breaches of the Pharmacy Products and Services Agreements by Omnicare and Omnicare of Florida, the Facilities have sustained damages in an amount greater than $1.7 million, exclusive of interest and costs.

WHEREFORE, the Facilities demand judgment against Defendants for damages, pre- and post-judgment interest and costs, and such other and further relief as this Court deems necessary and proper.

15

## COUNT II: UNJUST ENRICHMENT

47.     The Facilities hereby re-allege and incorporate herein the allegations set forth in Paragraphs 1 through 38, inclusive, as though set forth at length herein.

48.     The Facilities were billed by Omnicare and Omnicare of Florida for pharmaceutical products and services which were not received by the Facilities.

49.     Omnicare and Omnicare of Florida received a benefit in the form of financial compensation from the Facilities.

50.     Omnicare and Omnicare of Florida accepted and retained the benefit of financial compensation with the knowledge that such compensation was excessive and beyond value of the pharmaceutical products and services actually provided to the Facilities.

51.     It would be inequitable for Omnicare and Omnicare of Florida to retain this additional financial compensation for products and services which the Facilities did not receive.

WHEREFORE, the Facilities demand judgment against Defendants for damages, pre- and post-judgment interest and costs, and such other and further relief as this Court deems necessary and proper.

## COUNT III: COMMON LAW FRAUD

52.     The Facilities hereby re-allege and incorporate herein the allegations set forth in Paragraphs 1 through 38, inclusive, as though set forth at length herein.

53.    The Pharmacy Products and Services Agreements are lawful, valid and binding contracts by and between Omnicare of Florida and the Facilities for the provision of pharmaceutical products and services.

54.    Pursuant to the Master Agreement and each Pharmacy Products and Services Agreement, Omnicare and Omnicare of Florida represented to the Facilities that they would provide prices for their pharmaceutical products and services which were no higher than the most favorable prices for pharmacy products and services charged to third party facilities located in the same state.

55.    For the period of December 1, 2003 until various dates in December 2009 and January 2010, Omnicare and Omnicare of Florida submitted monthly invoices to the Facilities for pharmaceutical products and services on the pretense that such goods and services were being provided to the Facilities in accordance with the "most favorable pricing" provision of the Master Agreement.

56.    However, Omnicare and Omnicare of Florida had knowledge that the cost per patient per day rate which was being charged to the Facilities was not the "most favorable pricing," as Omnicare and Omnicare of Florida were charging the Facilities a rate which was higher than that being charged to other facilities in Florida with which Omnicare and Omnicare of Florida had contracts.

57.    Omnicare and Omnicare of Florida made representations and guarantees to the Facilities that they would provide the most favorable prices for pharmacy products and services which were no higher than those charged to third party facilities in the same state with which Omnicare and Omnicare of

17

Florida had contracts, with the intention that the Facilities would rely on those representations and guarantees in executing contracts with Omnicare of Florida.

58.    The Facilities did rely on the representations and guarantees of Omnicare and Omnicare of Florida with regard to the "most favorable pricing" for pharmaceutical products and services in executing the Pharmacy Products and Services Agreements.

59.    As a result of the reliance on false representations and guarantees, the Facilities were billed and paid for prices which were higher than those being charged to third party facilities in Florida with which Omnicare and Omnicare of Florida had contracts, were billed for more quantities of pharmacy services and pharmaceutical products than were actually provided, and were billed for charges either not allowed by Medicaid or payable by Medicaid, resulting in overpayments in an amount greater than $1.7 million, exclusive of interest and costs.

WHEREFORE, the Facilities demand judgment against Defendants for damages, pre- and post-judgment interest and costs, and such other and further relief as this Court deems necessary and proper.

### COUNT IV: VIOLATION OF THE FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT

60.    The Facilities hereby re-allege and incorporate herein the allegations set forth in Paragraphs 1 through 38, inclusive, as though set forth at length herein.

61.    Omnicare and Omnicare of Florida have engaged in unlawful acts and practices in violation of the Florida Deceptive and Unfair Trace Practices Act,

as defined in § 501.204, Fla. Stat., including but not limited to, engagement in unlawful and unfair methods of competition, unconscionable acts or practices, and unfair deceptive acts or practices in the conduct of business.

62.    Specifically, the deceptive and unfair trade practices of Omnicare and Omnicare of Florida in connection with pharmaceutical products and services rendered to the Facilities include, but are not limited to:

      a. Charging for more quantities of pharmacy services and pharmaceutical products than were actually provided;

      b. Billing for products and services in a manner that did not indicate any of the industry and/or regulatorily-accepted indicia of billing for pharmacy services;

      c. Billing for charges either not allowed by Medicaid or payable by Medicaid;

      d. Failing to notify the Facilities when a drug had been determined to be non-compensable or payment had been denied; and

      e. Billing for pharmaceutical products and services at a rate higher than the most favorable prices for pharmacy products and services charged to third party facilities.

63.    As a result of the deceptive and unfair trade practices of Omnicare and Omnicare of Florida, the Facilities were overcharged for the pharmaceutical products and services and have sustained economic damages as a result.

WHEREFORE, in accordance with § 501.211, Fla. Stat., the Facilities demand judgment against Defendants for damages, interest, costs, and attorney's fees, and such other and further relief as this Court deems necessary and proper.

Dated this __11th__ day of April, 2012.

JANICE L. MERRILL
Florida Bar No. 0124257
CHANEL A. MOSLEY
Florida Bar No. 0070045
MARSHALL, DENNEHEY, WARNER,
  COLEMAN & GOGGIN
A Professional Corporation
Landmark Center One, Suite 550
315 E. Robinson Street
Orlando, FL 32801-2719
Telephone:   (407) 420-4380
Facsimile:   (407) 839-3008
Email:  jlmerrill@mdwcg.com
        camosley@mdwcg.com
COUNSEL FOR PLAINTIFFS

21/403960.v1